## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JASON SHEPPARD,  )
  )
    Petitioner,  )
  )    **Civ. No. 13-1667**
vs.  )    **Crim. No. 10-119**
  )
UNITED STATES OF AMERICA.  )
  )

## MEMORANDUM OPINION AND ORDER

Pending before this Court is Jason Sheppard's "Petitioner's Motion to Vacate, Set Aside

or Correct a Sentence Pursuant to 28 U.S. C.§2255" ("Petitioner's §2255 Petition") [ECF #75].

The United States has filed a Motion to Dismiss Defendant's Motion to Vacate" [ECF #76]. For

the reasons set forth below, the Government's Motion to Dismiss is granted and Petitioner's

§2255 Petition is denied.

**I. Background.**

Petitioner was charged by Indictment at Crim. No. 10-119 in this district with five (5)

counts of wire fraud in violation of 18 U.S.C. § 1343. On August 11, 2011, he pleaded guilty to

Count One (1) of the Indictment pursuant to a written plea agreement with the Government.

On June 12, 2012, after finding the relevant offense level to be a 22 and that Petitioner's

criminal history category was a II, Petitioner was sentenced to fifty-five (55) months in prison;

the applicable United States Sentencing Guidelines range for an offense level of 22 and a

criminal history category of I was 46 to 57 months' imprisonment. This sentence was consistent

with that contemplated by the plea agreement. The parties had agreed that the applicable base

offense level was a 7, that the offense level was to be increased by 16 levels due to the amount of

loss involved, that the amount of said loss associated with Petitioner's conduct was between $1 million and $2.5 million, based on the parties' best understanding of the information available as of the date of the agreement, that the offense level was to be increased another 2 levels to account for his role in the offense, and that Petitioner should receive a three offense level reduction for acceptance of responsibility, for a total offense level of 22.

**II. Standard of Review under 28 U.S.C. § 2255.**

Section 2255 of Title 28 of the United States Code provides a means of collaterally attacking a sentence imposed after a conviction. U.S. v. Cannistraro, 734 F.Supp. 1110, 1119 (D. N.J. 1989). Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." U.S. v. Gordon, 979 F. Supp. 337, 339 (E.D. Pa. 1997) (citing Hill v. U.S., 368 U.S. 424, 428 (1962)).

The Court must consider the motion together with all the files, records, transcripts and correspondence relating to the judgment under attack. See 28 U.S.C. § 2255, Rule 4(b) of the Rules Governing Section 2255 Proceedings. A district court considering a § 2255 motion "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record,'" U.S. v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)), and a court "abuses its discretion if it fails to hold an

evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." Booth, 432 F.3d at 546 (citing U.S. v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005). However, the final disposition of a § 2255 motion lies with the discretion of the trial judge, see Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), and a district court may summarily dismiss a §2255 motion where the motion, files, and records "show conclusively that the movant is not entitled to relief." U.S. v. Mason, 2008 WL 938784, 1 (E.D. Pa. 2008) (citing Forte, 865 F.2d at 62).

A defendant can, however, waive his right to collaterally attack his sentence pursuant section 2255 pursuant to a plea agreement, and said waiver will be upheld as long as the Court determines that the waiver was knowing and voluntary and does not result in a miscarriage of justice. See United States v. Khattak, 273 F.3d 557, 558, 563 (3d Cir.2001) (holding that, as a matter of first impression, waivers of right to appeal are permissible if entered into knowingly and voluntarily, unless they work a miscarriage of justice, and that defendant's waiver of his appeal rights contained in a plea agreement was knowingly and voluntarily made); United States v. Gwinnett, 483 F.3d 200, 205 (3d Cir.2007) (holding that appellate court would not review the merits of sentencing appeal because defendant knowingly and voluntarily waived her right to appeal); United States v. Mabry, 536 F.3d 231 (3d Cir.2008) (appellate court extended Khattak's reasoning and holding to uphold a waiver of the right to file a section 2255 or other petition seeking collateral relief from a sentence).

### III. No Need for an Evidentiary Hearing.

When a motion is made pursuant to 28 U.S.C. § 2255, the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion, the court must accept the truth of the Petitioner's factual allegations unless they are clearly

frivolous on the basis of the existing record, <u>Booth</u>, 432 F.3d at 545, and the court must order an evidentiary hearing to determine the facts unless the motion, files and records of the case show conclusively that the petitioner is not entitled to relief. <u>U.S. v. Day</u>, 969 F.2d 39, 41-42 (3d Cir. 1992); <u>United States v. Gordon</u>, 979 F. Supp. 337, 339 (E.D. Pa. 1997). Here, we find no need for an evidentiary hearing, since the record conclusively establishes that Petitioner is not entitled to the relief sought in his § 2255 Petition.

**IV. Summary of Arguments**.

It is Petitioner's contention that his §2255 Petition should be granted because his defense counsel rendered ineffective assistance of counsel by failing to explain the terms of the plea agreement to Petitioner such that Petitioner did not understand the terms pursuant to which he was pleading guilty and the ramifications of his pleading guilty. <u>See</u> Petitioner's §2255 Petition, p. 3 ("[t]he basis of Sheppard's motion deals with his attorney's actions related to Sheppard reviewing his plea agreement and coming to understand is ramification including, but not limited to, the relevant conduct portion as it relates to restitution. Sheppard, in pleading guilty to one count, assumed that his restitution exposure was $107,000.00. Later, and after the plea was accepted, by the Court, he discovered that his exposure was closer to 1.5 million dollars."). Petitioner also argues that any waiver of his right to file a §2255 Petition was neither knowing nor voluntary because defense counsel did not talk to him about the contents of the plea agreement until fifteen (15) minutes prior to the change of plea hearing, as they walked to the courthouse, and he did not read the plea agreement until they got to the courtroom, five minutes before the hearing began, so that when this Court asked Petitioner questions about the plea agreement and his pleading guilty in general, he did not understand enough to ask questions and

did not understand that he was being held responsible for $1.5 million in losses as opposed to $107,000.

In response to the §2255 Petition, the Government filed a Motion to Dismiss. The basis for the Motion to Dismiss is that Petitioner knowingly and voluntarily entered in a plea agreement with the Government pursuant to which he agreed to waive his right to file any collateral appeals of his sentence and that enforcement of the waiver will not result in a manifest injustice, such that the waiver should be enforced and the §2255 Petition dismissed.

Petitioner then filed a Response to the Government's Motion to Dismiss in which he reiterated his contention that his waiver was neither knowing nor voluntary and that defense counsel's actions constituted ineffective assistance of counsel such that it would be a "miscarriage of justice" to enforce such a waiver.

The Government then filed a Reply to Petitioner's Response to its Motion to Dismiss. In its Reply, the Government argued in greater detail its contention that "the defendant knowingly and intelligently gave up his right to collaterally attack his conviction or sentence," attaching to the Reply a copy of the transcript of the plea hearing. Reply, p. 2 and exhibit. The Government also argued that "[i]n his reply, the defendant did not claim some sort of manifest injustice. In fact, he did not even assert his innocence and conceded that even if he had a more thorough understanding of the plea agreement than he is now prepared to admit, he still would have entered into the plea agreement. Thus, this case presents a particularly strong one for enforcement of the plain and unambiguous terms of the plea agreement." Id.

**V. Legal Analysis.**

We first address the issue of whether or not Petitioner knowingly and voluntarily entered in a plea agreement with the Government pursuant to which he agreed to waive his right to file any collateral appeals of his sentence and whether enforcement of the waiver will result in a

manifest injustice. In U.S. v. Mabry, the appellate court provided instruction for our review of the validity of a collateral waiver. A court has "an independent obligation to conduct an evaluation of the validity of a collateral waiver." Mabry, 536 F.3d at 238. Specifically, we must examine (1) the "knowing and voluntary nature" of the waiver, based on what occurred and what the defendant contends, and (2) whether the enforcement of the waiver would work a "miscarriage of justice." Id. at 237. "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." Id. at 237-238 (citing Khattak, 273 F.3d at 563).

**A. Whether Petitioner's waiver of his right to file a §2255 Petition was knowing and voluntary.**

With regard to whether the Petitioner's waiver in this case was knowing and voluntary, we must, at a minimum, "review[] the terms of the plea agreement and change-of-plea colloquy and address[] their sufficiency." Id. at 239. Here, in the written plea agreement, Petitioner agreed that, with very limited exceptions, he would neither appeal nor present any collateral challenge to his conviction or sentence. Specifically, the section of the plea agreement that addressed Petitioner's waiver of his appellate rights stated as follows:

> 5. Jason Sheppard waives the right to take a direct appeal from his conviction or sentence under 28 U.S.C. §1291 or 18 U.S.C. §3742, subject to the following exceptions:
>
> (a) If the United States appeals from the sentence, Jason Sheppard may take a direct appeal from the sentence.
>
> (b) If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range

determined by the Court under the Sentencing Guidelines, Jason Sheppard may take a direct appeal from the sentence.

Jason Sheppard further waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and right to file any other collateral proceeding attacking his conviction or sentence.

August 11, 2011 Plea Agreement.

In addition to Petitioner signing the plea agreement containing the above paragraph, the following relevant questioning by the Court, responses by Petitioner, and statements by the Government took place during the plea hearing. First, the Court inquired of Petitioner: "You understand that under some circumstances you or the government may have the right to appeal any sentence that I might impose. But as I understand it, in the plea agreement, there are certain restrictions on your rights of an appellate nature; you understand that?" Plea Transcript, p. 12. Petitioner answered: "Yes, Your Honor." Id. The Court then asked the Government is there had been a plea agreement entered into by the parties, to which the Government answered: "[t]here has, Your Honor. It was signed earlier by the United States Attorney and then executed this morning by Mr. Gerson and by Mr. Sheppard. I have marked the original as Government's Exhibit 1. If the Court would like, I can summarize the terms." Id. at p. 13.

The Government then set forth all of the terms of the plea agreement. Id. at pp. 13-16. Relevant to the issue of Petitioner's right to file a collateral appeal such as the instant §2255 Petition, the prosecutor stated:

MR. DILLON: The next paragraph [of the plea agreement] contains the language that the Court just alluded to regarding the appellate waiver. I'll just read what it says. Jason Sheppard waives the right to take a direct appeal from his conviction or sentence under 28 United States Code, Section 1291, or 18 United States Code, Section 3742, subject to the following exceptions.

7

It then provides for two exceptions. Number one, if the United States appeals from the sentence, Jason Sheppard may take a direct appeal from the sentence.

The second says, if the sentence exceeds the applicable statutory limits set forth in the United States Code or the sentence unreasonably exceeds the Guideline range determined by the Court under the Sentencing Guidelines, Mr. Sheppard may take a direct appeal from the sentence.
It then goes on to provide that Jason Sheppard further waives the right to file a motion to vacate sentence under Title 28, United States Code, Section 2255, attacking his conviction or sentence and the right to file any other collateral proceeding attacking his conviction or sentence.

Plea Transcript, pp. 13-14.

At the conclusion of the Government's recitation of the terms of the plea agreement, the

following dialogue took place between the Court and Petitioner:

THE COURT: Mr. Sheppard, was Mr. Dillon's recitation of that agreement, was that consistent with your understanding?

THE DEFENDANT: Yes, it was, Your Honor.

THE COURT: Do you have any questions about that?

THE DEFENDANT: No. I do not.

THE COURT: You understand about your waiver of your appellate rights? You have any question about that?

THE DEFENDANT: No, I do not, Your Honor.

THE COURT: It's very important that I have been told all of the relevant bargaining that's taken place, because I want to guard against any possible misunderstanding of the terms of the plea bargain. Is there any representation made by the United States Attorney that's not absolutely clear in your mind?

THE DEFENDANT: No, Your Honor.

Id. at p. 17.

The Court later asked Petitioner:

THE COURT: Reviewing all the things that we've discussed here today, Mr. Sheppard, is it still your wish to enter a plea of guilty to Count One and waive your right to a trial by jury?

THE DEFENDANT: Yes, it is, Your Honor.

. . .

THE COURT: Do you have any question to ask me, Mr. Sheppard?

THE DEFENDANT: No, I do not, Your Honor.

Plea Transcript, p. 22. It was at this point, that the Court accepted Petitioner's guilty plea to Count One of the Indictment: "[w]ell, since you do acknowledge that you are, in fact, guilty as charged in Count One and based on our discussion today, I find that you know your right to a trial, what the maximum possible punishment is, and that you are voluntarily pleading guilty. I will accept your guilty plea and enter a judgment of guilty on your plea, and we'll ask you to sign the guilty endorsement." Id. at p. 22-23.

Having reviewed of the Plea Agreement entered into by the parties and the transcript of the change of plea hearing, we find that even assuming Petitioner's recitation of defense counsel's actions with respect to the plea agreement are accurate, Petitioner's waiver of his right to collaterally attack his sentence was both knowing and voluntary.

### B. Whether enforcement of waiver would result in manifest injustice.

Having concluded that Petitioner's waiver of his right to bring a collateral appeal such as the instant §2255 Petition was knowing and voluntary, we next must consider whether the enforcement of the waiver "would work a miscarriage of justice in this case." Mabry, 536 F.3d at 239. A court is to use a "common sense approach" and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." Id. at 242-243. There is no identified list of specific circumstances to consider before invalidating a waiver as involving a miscarriage of justice. Id. The United States Court of Appeals for the Third Circuit, however, has "endorsed the methodology of the Court of Appeals for the First

Circuit," and instructed that we should consider "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result . . .'" Id. at 242-243 (quoting U.S. v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

Again, Petitioner's argument is that his defense counsel rendered ineffective assistance of counsel by failing to properly review with Petitioner the terms of the plea agreement prior to Petitioner signing it, and therefore, he did not understand its ramifications, including, but not limited to, the amount of monetary loss for which he was agreeing he was accountable, the amount of which affected the length of his term of imprisonment. "A claim of ineffective assistance requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993) (citing Strickland v. Washington, 466 U.S. 668, 687-688 (1984)).

In assessing the first prong of the Strickland "ineffective assistance of counsel" analysis, the Supreme Court has instructed that "[t]he proper measure of attorney performance" is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. This is an objective standard, and must be "viewed to the extent possible without 'the distorting effects of hindsight.'" Duncan v. Morton, 256 F.3d 189, 200 (3d Cir. 2001) (quoting Strickland, 466 U.S. at 688-90). In addition, a "reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" McAleese, 1 F.3d at 175 (quoting Strickland, 466 U.S. at 692). "The defendant must overcome the presumption that,

under the circumstances, the challenged action 'might be considered sound trial strategy.'"
Strickland, 466 U.S. at 689.

At the second part of the Strickland analysis, "[t]o establish prejudice, a defendant must demonstrate that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Weeks v. Snyder, 219 F.3d 245, 257 (3d Cir. 2000) (quoting Strickland, 466 U.S. at 694). The Supreme Court has explained that a "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Id. at 694. In making the prejudice determination, the court must consider the totality of the evidence. Id. at 695.

Finally, a petitioner's claim of ineffective assistance must identify the specific errors that counsel is alleged to have made.  Conclusory allegations are not sufficient to support a petition under Section 2255.  Blackledge v. Allison, 431 U.S. 63, 74 (1977). See also U.S. v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (citing U.S. v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988) (reiterating that "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.")).

Having reviewed the evidence of record in light of Petitioner's §2255 Motion we conclude that no manifest injustice will result if we find that Petitioner waived his right to file a §2255 Petition. We so find because even assuming that defense counsel failed to properly review the terms of the plea agreement with Petitioner prior to Petitioner signing it, and that as such, defense counsel's representation fell below an objective standard of reasonableness, an ineffective assistance of counsel claim would not be successful because Petitioner has not established that this deficient performance prejudiced him in any way; "[t]o establish prejudice, a defendant must demonstrate that there is a 'reasonable probability that but for counsel's

unprofessional errors, the result of the proceeding would have been different.'" <u>Weeks v.</u>
<u>Snyder</u>, 219 F.3d at 257. In other words, Petitioner has not established that had he known that
the amount of loss that he would be held accountable for was $1.5 million dollars and not
$107,000, he would not have pled guilty to Count One of the Indictment. Indeed, to the contrary,
in his Response to the Government's Motion to Dismiss, Petitioner states: "Had [defense
counsel] and Sheppard sat down and thoroughly discussed everything and had [defense counsel]
then been asked all about the intricacies and effects of the signing, then Sheppard himself
concedes that he would have entered the agreement as is currently believed. As it was, he
[defense counsel] did not." Petitioner's Response to Motion to Dismiss, p. 4.

Additionally, we take the time to note that a review of the transcript from the plea hearing
contradicts Petitioner's contention that it was not until after the plea hearing that he was made
aware that $1.5 million in loss was being attributed to him and not $107,000, which caused his
base offense level to be increased by 16 points and caused him to have to pay restitution in that
amount to the victims of his crime. In particular, in summarizing the plea agreement, the
Government explained that Petitioner was "accept[ing] his responsibility for the conduct charged
in Counts Two through Five of the indictment and stipulates that that conduct may be considered
by the Probation Office in calculating the Guidelines." Plea Hearing Transcript, p. 13. The
Government further explained, relative to the amount of loss attributed to Petitioner, that the
parties had agreed that: (1) "the conviction is part of a scheme of criminal activity, [thus]
restitution is not limited to just offense of conviction or here in Count One;" (2) "that the loss
associated with the offense of conviction, as well as all relevant conduct, is between one million
dollars and two and a half million dollars. That's the parties' best understanding of the loss at
this time. Of course, that stipulation is not binding on the Court and either party can bring to the

Court's attention anything that subsequently comes to their attention after today;" and (3) that [the base offense level] should be increased by sixteen levels due to the amount of loss." Id. at pp. 15-16. We also point out that the Court then asked Petitioner whether the Government's recitation of the plea agreement was consistent with his understanding, to which Petitioner replied that it was. Id. at p. 17. The Court then queried Petitioner if he had any questions about the plea agreement, to which Petitioner said no. Id. The Court then explained that it was very important that it was told all of the relevant bargaining that's taken place, because it wanted to guard against any possible misunderstanding of the terms of the plea bargain and asked Petitioner whether there were any representations made by the United States Attorney about the plea agreement that was not absolutely clear in Petitioner's mind, to which Petitioner stated "no."

Id. Finally, after the Government explained in relevant part:

> should the case proceed to trial, the government would establish that Mr. Sheppard was the president of a business known as TruClose. That's one word, T-R-U-C-L-O-S-E, Financial Services. That company closed loans which were collateralized by real estate. TruClose had two types of accounts, an operation account and an escrow account.
>
> The investigation showed that for much of 2009, Mr. Sheppard withdrew money from TruClose's accounts. The investigation revealed that the money was spent largely on paying off gambling operations or obligations, as well as sustaining Sheppard's lifestyle. For a several-month period from October to December of 2009, Mr. Sheppard's spent nearly six hundred thousand dollars by forwarding that money to casinos from the accounts of TruClose Financial. He also wire-transferred money into his wife's account and used the business's account to pay her credit card bills. The shortfall caused thereby was, approximately, $1.4 million,

the Court asked Petitioner: [i]s that a fair statement of what happened here, Mr. Sheppard?," and

Petitioner answered, "Yes, Your Honor."

## VI. Conclusion.

Having found that Petitioner knowingly and voluntarily waived his right to collaterally attack his sentence pursuant section 2255 in the plea agreement he entered into with the Government, and that the enforcement of said waiver does not result in a miscarriage of justice, we will deny Petitioner's § 2255 Petition and grant the Government's Motion to Dismiss.

## VII. Certificate of Appealability.

The remaining issue before this Court is whether a certificate of appealability ("COA") should be issued with respect to Petitioner's § 2255 Petition. A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000). We find that jurists of reason would not find our assessment of Petitioner's constitutional claims to be either debatable or wrong. Therefore, the Court will deny a certificate of appealability.

An appropriate Order follows:

## ORDER

AND NOW, this _6_ th day of March, 2014, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant United States' "Motion to Dismiss Defendant's Motion to Vacate" [ECF#76] is GRANTED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Jason Sheppard's *pro se* "Petitioner's Motion to Vacate, Set Aside or Correct A Sentence Pursuant to 28 U.S.C. 2255" ("Petitioner's § 2255 Petition") [ECF#75] is DENIED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that a certificate of appealability SHOULD NOT ISSUE with respect to this Court's instant Order denying Petitioner's § 2255 Petition because, for the reasons set forth in the Opinion accompanying this Order which addresses the merits of his § 2255 Petition, Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). See also Third Circuit Local Rule 22.2 (stating that "[i]f an order denying a petition under . . . § 2255 is accompanied by an opinion . . . it is sufficient if the order denying the certificate [of appealability] references the opinion . . . .").

_Maurice B. Cohill, Jr._
Maurice B. Cohill, Jr.
Senior United States District Judge

cc: Jason Sheppard
   32102-068
   Lexington
   Federal Medical Center
   Inmate Mail/Parcels
   P.O. Box 14500
   Lexington, KY 40512