IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON SHEPPARD, | ) |
| Petitioner, | ) |
| vs. | ) Crim. No. 10-119 |
| UNITED STATES OF AMERICA. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before this Court is Petitioner Jason Sheppard's "Petition in Opposition to Memorandum Order and Motion for Stay for Court Appointed Attorney Pursuant to 18 U.S.C. §3006A(a)(2) under Nunc-Pro-Tunc." ECF No. 128. This is the 6th time Mr. Sheppard has requested that we appoint counsel in his habeas proceeding, all of which we have denied. Because Mr. Sheppard appears to be unable to accept that there is no basis to appoint counsel for Mr. Sheppard we take the time now to explain in detail why are denying his petition.

**I. Background**

Mr. Sheppard was charged by Indictment at Criminal No. 10-119 with five counts of wire fraud in violation of 18 U.S.C. § 1343. On August 11, 2011, he pleaded guilty to Count One of the Indictment pursuant to a written plea agreement with the Government. The Indictment set forth Petitioner's Scheme and Artifice as follows:

1. From in or around October 2009, and continuing thereafter until in or around January 2010, in the Western District of Pennsylvania and elsewhere, the defendant, JASON SEPPARD, devised and intended to device a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations and promises were false and fraudulent when made.

2. It was part of the scheme and artifice to defraud that the defendant, JASON SHEPPARD, operated a company called TruClose Financial Services that specialized in closing real estate transactions.

1

3. It was further a part of the scheme and artifice to defraud that the TruClose Financial Services was required, pursuant to the settlement statements, to pay off certain obligations associated with the properties serving as collateral for the loans, but, as the defendant, JASON SHEPPARD, then well knew, TruClose failed to pay some of those obligations.

4. It was further a part of the scheme and artifice to defraud that the defendant, JASON SHEPPARD, diverted money from the accounts of TruClose Financial Services for his personal benefit, which, as he then well knew, caused TruClose Financial Services to fail to meet the financial obligations that TruClose Financial Services was representing to the lending institutions that it was paying.

5. It was further a part of the scheme and artifice to defraud that the defendant, JASON SHEPPARD, caused the execution of settlement statements by representatives of TruClose Financial Services that, as defendant, JASON SHEPPARD, then well know, falsely represented that the settlement statements were a true and accurate account of the funds which were received and had been or would be disbursed as part of the settlement of the transactions.

6. It was further a part of the scheme and artifice to defraud that the defendant, JASON SHEPPARD, rather than paying obligations associated with the properties serving as collateral for the loans, used some of the funds for his own personal benefit.

ECF No. 1. Count One charged Mr. Sheppard with unlawfully transmitting and causing to be transmitted an interstate wire transmission on December 14, 2009 in the amount of $107,866.59 in support of the artifice and scheme.

## II. Discussion

There is no absolute constitutional right to appointment of counsel in a federal habeas proceeding. Coleman v. Thompson, 501 U.S. 722, 757, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); see also Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1989) ("the right to appointed counsel extends to the first appeal of right, and no further."). A court may exercise its discretion in appointing counsel to represent a habeas petitioner if it "determines that the interests of justice so require" and that the petitioner is financially unable to obtain adequate representation. 18 U.S.C. § 3006A(a)(2)(B).

> Under these guidelines, counsel may be appointed where a *pro se* prisoner in a habeas action has made a colorable claim, but lacks the means to adequately investigate, prepare, or present the claim.... District courts have discretion to appoint counsel in habeas cases where the interests of justice so require.... Factors to consider include whether the claims raised are frivolous, the complexity of the factual and legal issues, and if appointment of counsel will benefit the petitioner and the court.

U.S. v. Cidone, 2013 WL 6730908, at *3-4 (M.D. Pa. Dec. 19, 2013) (quoting Clay v. Sauers, 2013 WL 4463563, at *4-5 (E.D.Pa. Aug.21, 2013) (internal citations omitted).

Similarly, as explained by the appellate court in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993), in determining whether to appoint counsel, "the district court must consider as a threshold matter the merits of the Plaintiff's claim. '[B]efore the court is justified in exercising its discretion in favor of appointment, it must first appear that the claim has some merit in fact and law'." Id. at 155, quoting, Maclin v. Freake, 650 F.2d 885, 887 (7th Cir. 1981).  Only "if the district court determines that the plaintiff's claim has arguable merit in fact and law, [should] the court . . . then consider a number of additional factors that bear on the need for appointed counsel." Tabron, 6 F.3d at 155.  These "other factors" include whether the legal issues are complex, the degree to which factual investigation will be required; whether extensive discovery is likely; and whether the case is likely to turn on credibility determinations. Tabron, 6 F.3d at 156-57.

In his present petition Mr. Sheppard purports to set forth why the interests of justice require that we appoint counsel in his case.  He argues that his claim rests upon newly discovered evidence that had it been discovered previously demonstrates that "no reasonable factfinder would have found Sheppard guilty of the offense."  ECF No. 128, at 2.  He further explains that his claim has arguable merit because when "accepting Sheppard's exhibits as newly discovered

3

evidence, the actual innocence gateway requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record . . . ." ECF No. 128, at 3-4.

Mr. Sheppard sets forth why he is actually innocent of the offense in his concluding paragraph in which he explains that because he "never authorized the checks to be directed to his escrow accounts[,] and the Casino violated New Jersey State Law by deducting monies from an L.L.C. (Limited Liability Company) which casinos are not permitted to do[,] meaning Sheppard never committed any criminal act or federal violation of 18 U.S.C.1343." ECF No. 128, at 6.

The factual basis for his claim of actual innocence appears to the Court to be entirely separate from his claim of newly discovered evidence, but it is clear that Mr. Sheppard believes that they are related. The newly discovered evidence concerns Mr. Sheppard's prior defense counsel's representation of Mr. Sheppard in this criminal case having also represented Morgan McCollum in connection with a DUI charge. Mr. Sheppard alleges that Ms. McCollum was interviewed by government agents investigating Mr. Sheppard's conduct in this case. Mr. Sheppard further alleges that his prior defense counsel, Gary Gerson, Esquire, advised Ms. McCollum to testify against Mr. Sheppard and thereby secured the indictment against him. Upon this basis Mr. Sheppard claims that the "entire criminal matter was illegal in violation of Sheppard's Fifth and Sixth Amendment Rights under the Constitution" and therefore his plea agreement was illegal. ECF No. 128, at 5.

We understand Mr. Sheppard's argument is that his prior defense counsel operated under a conflict of interest in representing Ms. McCollum and Mr. Sheppard. The conflict allegedly arose when Ms. McCollum was asked to testify about Mr. Sheppard's activity with respect to his activities related to TruClose Financial Services. In order for the resulting Indictment to be "illegal" and for Mr. Sheppard to be actually innocent, it must be that Ms. McCollum provided

false information to the government so devastating and airtight that the government was able to draft an Indictment that was so compelling that Mr. Sheppard had no choice but to plead guilty to conduct for which he claims he was actually innocent. His argument also must rest on his allegation that had he been aware that Ms. McCollum was providing information against him, and that he knew what the false information was, that he would not have plead guilty and would have been able to assert his innocence. The argument continues, apparently, that now that the information about Ms. McCollum's involvement has surfaced he feels free to proclaim his actual innocence, but otherwise fails to show how this information establishes his innocence.

We will deny Mr. Sheppard's motion to appoint counsel. We find that he has not raised a colorable claim and the interests of justice do not require that counsel be appointed to represent him.

Mr. Sheppard continues to claim that he did not have access to the newly discovered evidence in order to raise this issue on direct appeal or in his initial habeas proceeding. Wise v. Fulcomer, 958 F.2d 30, 34 n. 9 (3d Cir. 1992) (To show cause, the petitioner "must establish that 'some external impediment' prevented him from raising the claim") quoting McClesky v. Zant, 499 U.S. 467 (1991)). Assuming this is true, Mr. Sheppard is unable to show that he was prejudiced by his unawareness of Ms. McCollum's alleged testimony, and most significantly cannot show that he was "actually innocent."

Mr. Sheppard has never explained how Ms. McCollum's involvement in this case, or Mr. Gerson's advising her to testify and tell the truth, exonerates him or otherwise changes the fact that he is guilty of the offense in this case. Mr. Sheppard has not shared what alleged information he believes Ms. McCollum provided to the authorities that, had he been aware of her involvement, he could have successfully asserted his innocence of the charges. In addition, Mr.

5

Sheppard has not even set forth a *possible* scenario in which Ms. McCollum's testimony would have prejudiced him in anyway. Instead he appears to rely solely on the fact that a prejudicial conflict of interest arose when Mr. Gerson advised Ms. McCollum to cooperate with agents investigating Mr. Sheppard and to "tell the truth," at the same time that Mr. Gerson represented Mr. Sheppard.

This is where Mr. Sheppard's argument breaks down. He offers nothing but pure speculation that somehow Mr. Gerson and Ms. McCollum unlawfully collaborated against him and that Ms. McCollum, by herself, was able to provide damning (and false) information that secured an Indictment against Mr. Sheppard that he could not defend against because he did not know of Ms. McCollum's involvement. Similarly, he offers nothing but his own speculation that Mr. Gerson's involvement concerned more than simply telling Ms. McCollum to tell the truth to federal agents. We reject Mr. Sheppard's theory. There is no scenario based on the scant allegations regarding Ms. McCollum's involvement in the investigation of this case that would change the criminal conduct Mr. Sheppard engaged in.

In contrast to Mr. Sheppard's unsupported assertions, there is the evidence from his plea hearing and his sentencing that overwhelmingly establish Mr. Sheppard's factual guilt. Mr. Sheppard has no serious argument to rebut the evidence that he committed wire fraud as set forth in the Indictment. To review, the charge he plead guilty to involved a fraudulent scheme wherein Mr. Sheppard knowingly failed to pay obligations owed by his company TruClose Financial Services and instead took the money for his personal benefit. We explained the charge to Mr. Sheppard during his plea colloquy, and he indicated that he understood the charge:

> THE COURT: . . . basically, what you're charged here with is operating a company called The TruClose Financial Services. Apparently, at closing on real estate closings, you were supposed to pay off certain obligations that attached to that real estate and that you kept some of that money for yourself and did not pay,

6

did not pay off the creditors as you were supposed to. That's, basically, what the introduction is in the case.

And then Count One of the indictment, which is the one you've indicated you will plead to, it's the actual transmission of one of these amounts of money. And it states that Count One, December 14, 2009, it was a, a wire transfer in the approximate amount of one hundred seven thousand eight hundred sixty-six dollars and fifty-nine cents from the account of a lending institution known to the grand jury, sent from outside the Commonwealth of Pennsylvania to the First Niagara Bank account of TruClose Financial, located in Pittsburgh, Pennsylvania. That's Count One of the indictment. Do you understand that?

THE DEFENDANT: Yes, I do, Your Honor.

Plea Tr., 8/11/2011, 8-9.

We then asked the government to explain the facts that it would prove if the case would go to trial, and Mr. Sheppard indicated that it was a fair statement of what happened:

MR. DILLON: Your Honor, should the case proceed to trial, the government would establish that Mr. Sheppard was the president of a business known as TruClose. That's one word, T-R-U-C-L-O-S-E, Financial Services. That company closed loans which were collateralized by real estate. TruClose had two types of accounts, an operation account and an escrow account.
The investigation showed that for much of 2009, Mr. Sheppard withdrew money from TruClose's accounts. The investigation revealed that the money was spent largely on paying off gambling operations or obligations, as well as sustaining Sheppard's lifestyle.
For a several-month period from October to December 7 of 2009, Mr. Sheppard's spent nearly six hundred thousand dollars by forwarding that money to casinos from the accounts of TruClose Financial. He also wire-transferred money into his wife's account and used the business's account to pay her credit card bills. The shortfall caused thereby was, approximately, $1.4 million.
As part of the business's operation, a representative of TruClose would be required to sign a settlement statement that represented to the lenders that the liabilities associated with collateral had been paid off. This insured the lender would be in the first lien position after the loan was made. And so, in the event of a default, the borrowers would only have one mortgage obligation associated with the collateral.
But the problem here was that so much money had been withdrawn by the defendant from TruClose that they could not pay off the liabilities that were required to be paid as a part of these closings. Some of the checks were used to pay the liabilities. Some of those checks bounced. Mr. Sheppard was aware that TruClose could not pay those liabilities because he was told by the employees of the company. According to them, he instructed them to pay with a check as

7

> opposed to wire transferring the money because that would afford additional time to get the money into the escrow account.
> As a result of lack of money, TruClose did not pay off the liabilities associated with collateral. Therefore, lenders who were supposed to be in the first lien position were in the second position and borrowers who were supposed to only have one mortgage obligation associated with their real estate had two mortgage obligations. The interstate wire transfers referenced in the indictment including Count One were wire transfers funding the loans in which the liabilities were not paid off.
> These wires went from the account of financial institutions from outside of Pennsylvania to the account of TruClose, which is here in western Pennsylvania. And, specifically, the wire at Count One occurred on December 14 of 2009. As the Court mentioned, it involved a hundred seven thousand eight hundred sixty-six dollars and fifty-nine cents. It came from Wells Fargo Bank in Des Moines, Iowa. It went from there to the account of TruClose Financial at First Niagara Bank, which was in the Mount Lebanon branch.
> So, that would be a summary of the government's evidence in regard to Count One, Your Honor.
>
> THE COURT: Is that a fair statement of what happened here, Mr. Sheppard?
>
> THE DEFENDANT: Yes, Your Honor.

Plea Tr. 19-22. Moreover we specifically asked Mr. Sheppard, "What made you decide to plead guilty, Mr. Sheppard?" Plea Tr. 19. Mr. Sheppard's response was unequivocal: "Because I am guilty and I want to take responsibility for that." Plea Tr. 19.

At the sentencing hearing, we heard testimony from one of Mr. Sheppard's victims who eloquently set forth how Mr. Sheppard perpetuated his fraud against her and essentially stole her money through use of his company TruClose. Sentencing Tr., 6/12/2012, 5-9. Mr. Sheppard did not contest her testimony and in fact stated that he was "so sorry" to her as well as to his other "victims." Sent. Tr. 17.

Neither at his plea nor his sentencing did Mr. Sheppard ever indicate to the Court that he was actually innocent of the charges. He did not do this because he is guilty of the crimes. His late attempt to lay blame at the casino for honoring Mr. Sheppard's request to withdraw money from a bank account he controlled is nonsensical. The only conduct that matters here is that Mr.

8

Sheppard knowingly failed to pay obligations owed by his company TruClose Financial Services and instead took the money for his personal benefit. Nothing any casino did can alter the fact that Mr. Sheppard engaged in conduct that met the elements of violating 18 U.S.C. § 1343 and that he committed wire fraud.

### III. Conclusion

Mr. Sheppard fails to demonstrate how the interests of justice require the appointment of counsel when, as explained above, not even the most effective counselor could successfully establish that Mr. Sheppard was actually innocent or that he was prejudiced in any way that would have affected the outcome of his case. We will therefore deny his petition. As we have repeatedly told Mr. Sheppard, if he disagrees with a decision or otherwise believes we have made a mistake his recourse is to file an appeal to the United States Court of Appeals for the Third Circuit, who will decide if this Court is right or wrong. Further, Mr. Sheppard is on notice that any further requests to this Court that raises issues that I have already decided will be met with a summary denial.

### ORDER

AND NOW, this 13th day of August, 2015, it is hereby ORDERED, ADJUDGED, and DECREED that Jason Sheppard's "Petition in Opposition to Memorandum Order and Motion for Stay for Court Appointed Attorney Pursuant to 18 U.S.C. §3006A(a)(2) under Nunc-Pro-Tunc" (ECF No. 128) be and hereby is DENIED.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Judge

cc: Jason Sheppard, pro se
**155709 2F** (USM#32102-068)
Allegheny County Jail
950 2ND AVE
PITTSBURGH, PA  15219-3100